**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RAQUEL SPATHOS, | : | Civil Action No. 15-8014 (MAS) (DEA) |
| | : | |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| SMART PAYMENT PLAN, LLC, | : | |
| | : | |
| Defendant. | : | |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Smart Payment Plan, LLC's ("Smart Payment" or "Defendant") motion to dismiss Plaintiff Raquel Spathos's ("Spathos" or "Plaintiff") Complaint and compel arbitration, or alternatively, transfer venue to Illinois or Texas. (ECF No. 13.) Plaintiff filed opposition to the motion (ECF No. 15), and Defendant did not reply. The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendant's motion to dismiss or transfer venue to Illinois is denied, but Defendant's motion to transfer venue to the Western District of Texas is granted.

## I.   BACKGROUND

Spathos, a New York resident, contracted with Smart Payment as an independent contractor in or around 2008. (Verified Compl. ¶¶ 1, 6, 10, ECF No. 1-2.) Smart Payment is a limited liability company with citizenship in Texas and Florida. (*See* Notice of Removal ¶¶ 6-8, ECF No. 1.) The contractual relationship (the "Oral Contract") "provided that Raquel Spathos would solicit automobile dealers ("Clients") to offer Smart Payment's automated money

transmission service to customers of the dealerships ("Consumers") who financed their automobiles." (Verified Compl. ¶ 2.) Smart Payment and its employees use a web-accessible accounting software program to manage accounting for each transaction made with a Client. (*Id.* ¶ 4.) As Spathos's client base grew, she hired employees or agents to maintain her business. (*Id.* ¶ 17.)

Spathos signed a limited term agency agreement (the "Agency Agreement") on February 10, 2009. (*Id.* ¶ 11; Decl. of David Engelman, Ex. A ("Ex. A") 2, ECF No. 13-1.[1]) The Agency Agreement contains an arbitration provision and a choice of law provision favoring an Illinois forum. (Ex. A ¶¶ 14-15.) The Agency Agreement expired on February 10, 2014. (*See* Ex. A ¶ 4 (The Agency Agreement states that it extends "for a term of five years," and Spathos signed the Agency Agreement on February 10, 2009.).) Plaintiff and Defendant continued their business relationship after February 10, 2014 even though the written agreement expired, and they did not enter into a new written agreement. (*See* Ex. A; Verified Compl. ¶ 23.)

Smart Payment terminated its business relationship with Spathos on or about September 15, 2015, and cut off Spathos's access to the accounting software program that allowed her to track her accounts. (Verified Compl. ¶ 23.) In Count One of the Verified Complaint, Plaintiff asserts that Smart Payment breached the Oral Contract "by wrongfully withholding commission payment earned by Spathos and her Clients, and by blocking Spathos' access to the Smart Payment accounting software." (*Id.* ¶ 43.)

---

[1] When reviewing a Rule 12(b)(6) motion, a court should consider only the complaint, any exhibits attached, matters of public record, and documents forming the basis of the claim. *See M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010). In regards to the Rule 12(b)(6) motion here, the Court shall consider the Agency Agreement because it is a document forming the basis of the claim.

## II.   **ANALYSIS**

### A.   **Defendant's Motion to Compel Arbitration and Dismiss, or Alternatively, Transfer to Illinois**

1.   *Legal Standard*

In 1925, Congress passed the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, to counter "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Pursuant to the FAA, "[a] written provision in any . . . contract . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This text reflects the overarching principle that arbitration is a matter of contract." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013). "In short, if the Court finds that there exists no valid agreement to arbitrate, it must enjoin arbitration, but should the Court conclude that such an agreement exists and the dispute falls within the scope of the agreement, the matter must be referred to arbitration." *Bogen Commc'ns, Inc. v. Tri-Signal Integration, Inc.*, No. 04-6275, 2006 WL 469963, at *3 (D.N.J. Feb. 27, 2006), *aff'd*, 227 F. App'x 159 (3d Cir. 2007) (citing *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990)).

2.   *Discussion*

In its motion to compel arbitration and dismiss Plaintiff's Complaint, Defendant argues that the forum selection clause and the choice of law provision in the Agency Agreement should govern this dispute because the arbitration provision is enforceable and each of Plaintiff's claims fall under its broad scope. (Def.'s Moving Br. 9-10, ECF No. 13-2.) The Agency Agreement applies to "any controversies arising out of the terms of this Agreement." (Ex. A ¶ 15.) The crux of Plaintiff's argument, however, is that Defendant breached the Oral Contract created by the parties' long term business dealings, not the Agency Agreement that expired in 2014. (*See* Pl.'s

3

Opp'n Br. 2, ECF No. 15.) Plaintiff notes that the Agency Agreement plainly states that it is limited to "a term of five years" and argues that the alleged breach occurred in September of 2015, after the Agency Agreement already expired. (*Id*. at 2.)

It is well-established that parties to a contract "have it within their power to specify the date and hour at which their obligation to arbitrate is to end." *Bogen Commc'ns, Inc.*, 2006 WL 469963, at *3 (citing *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 762 (D.C. Cir. 1988)). "Where [the parties] have done so, there is nothing fairly arguable to refer to arbitration." *Id*. A broad, all-encompassing, arbitration provision alone cannot extend an agreement "beyond its clearly defined term." *Id* at *4. (citing *Nat'l R.R.*, 850 F.2d at 763) (stating that "if a contract provides that all disputes between the parties shall be arbitrated, but with equal clarity provides that it will expire on a date certain, then any dispute over whether the contract actually expired . . . must be decided by the court rather than the arbitrator") (internal quotation marks omitted).

Defendant confuses the Agency Agreement with the alleged Oral Contract created by the parties' business dealings. While there is a presumption in favor of arbitrability, the Agency Agreement plainly states that it extends "for a term of five years," meaning that it expired on February 10, 2014. (*See* Ex. A ¶ 4.) Defendant does not dispute this term of the contract, nor does it dispute that the alleged breach occurred in September of 2015, after the Agency Agreement expired. The parties very clearly specified the date that the Agency Agreement, including the arbitration provision, would expire. As in *Bogen*, the provision in the Agency Agreement that broadly states that arbitration governs "any controversies arising out of the terms of this [a]greement" is alone not enough to extend the duty to arbitrate to claims arising after February 10, 2014. (*Id*. ¶ 15.) The parties expressly agreed to a term of five years, and thus, the Court finds

4

that the parties did not intend to arbitrate claims arising after the expiration of the Agency Agreement.

Defendant's alternative request to transfer venue to Illinois pursuant to the choice of law clause in the Agency Agreement is also denied for the same reasons as above. The Court cannot decline to extend the arbitration provision to Plaintiff's claims and simultaneously extend another provision of the same contract to those claims. Defendant may be correct that these claims would normally fall within the broad bounds of both the arbitration provision and the choice of law clause. However, because Plaintiff's claims arose after the expiration of the Agency Agreement, these contractual terms do not apply to the claims.

### B.      Defendant's Motion to Transfer Venue to Texas

#### 1.      *Legal Standard*

In federal court, transfer of venue when original venue is proper is governed by 28 U.S.C. § 1404(a). *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Under § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1391(b)(1) provides that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).[2]

---

[2] Under 28 U.S.C. § 1332, "the citizenship of a limited liability company 'is determined by the citizenship of each of its members.'" *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 348 (3d Cir. 2013) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010)). This case could have originally been brought in Texas because Defendant is a limited liability company, and one of its two members, David Engelman, resides in Texas. (Notice of Removal ¶ 8.)

The "decision to transfer venue is committed to the discretion of the district court." *Larami Ltd. v. YES! Entm't Corp.*, 244 B.R. 56, 61 (D.N.J. 2000). "Section 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 883. Courts must remember that the "analysis is flexible and must be made on the unique facts of each case." *McNulty v. J.H. Miles & Co.*, 913 F. Supp. 2d 112, 115 (D.N.J. 2012) (quoting *Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 428 (D.N.J. 2000)). The Court must also consider that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879 (citations omitted).

In conducting its evaluation, the Court must balance the private and public interests related to the transfer. *Jumara*, 55 F.3d at 879. The private interest factors include:

> [1] plaintiff's forum preference as manifested in the original choice, [2] the defendant's preference, [3] whether the claim arose elsewhere, [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (internal citations omitted). The public interest factors include:

> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (internal citations omitted). It is the movant's burden to prove that transfer is necessary. *Id.* at 880.

6

2.      *Discussion*

The parties address only some of the public and private factors listed above, and thus, the Court will consider only the factors that the parties address.  Factors that are not discussed are considered neutral.

a.      The Private Interest Factors

(1)      Plaintiff's Forum Choice

"[C]ourts give substantially less weight to a plaintiff's forum choice when the dispute at the heart of a lawsuit occurred almost entirely in another state." *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 607 (D.N.J. 2010).  Defendant argues that because cessation of commission payments occurred in Texas, Plaintiff's forum choice should be given substantially less weight. (Def.'s Moving Br. 17.)  In response, Plaintiff argues that "Plaintiff's choice of forum is entitled to deference, and it is Defendant's burden to show that a change in venue is both necessary for 'the convenience of parties and witnesses, [and is] in the interest of justice.'" (Pl.'s Opp'n Br. 5 (citing 28 U.S.C. § 1404(a)).)

The heart of this lawsuit arises from Smart Payment withholding commission payments and cutting off Spathos's access to the accounting system. (Verified Compl. ¶ 43.)  Plaintiff does not dispute that the decisions to withhold payment and cut off her access were made in Texas. (*See* Pl.'s Opp'n Br. 5.)  Thus, the dispute which rests at the heart of the lawsuit occurred in Texas. Plaintiff's forum choice is therefore given substantially less weight, and this factor is neutral.

(2)      Where the Claim Arose

To determine where the claim arose, courts consider where the contract was negotiated, executed, performed, and where the alleged breach occurred. *McNulty*, 913 F. Supp. 2d at 118. "Where a party has . . . failed to make a payment, the locus of the action is where the party failed

7

[to] take that action rather than where the result is felt." *Id.* at 119 (quoting *Stalwart Capital, LLC v. Warren St. Partners, LLC*, No. 11-5249, 2012 WL 1533637, at \*4 (D.N.J. Apr. 30, 2012)). Defendant argues that the claim arose in Texas because both the decision to cease the payments and the decision to unilaterally terminate the Agency Agreement occurred in Texas. (Def.'s Moving Br. 18-19 (citing Ex. A ¶ 9).) Plaintiff argues that "[t]he breach occurred when and where Plaintiff was deprived of access to the internet accounting system." (Pl.'s Opp'n Br. 5.)

Based on the lack of facts asserted in the parties' briefs and supporting certifications, the only factor the Court can consider is where the alleged breach occurred. Defendant is correct that the alleged breach occurred in Texas. While Plaintiff asserts that the breach occurred where Spathos was denied access to the accounting system, she provides no case law to support this assertion, and the Court is not aware of any case law to support this. (*See* Pl.'s Opp'n Br. 5-6.) Plaintiff's claims rest on the allegation that Defendant breached the Oral Contract by "wrongfully withholding commission payment . . . and by blocking Spathos' access to the Smart Payment accounting software." (Verified Compl. ¶ 43.) Thus, the breach occurred in Texas, where the decision to withhold payment and cut off her access to the system was made. (Def.'s Moving Br. 18-19 (citing Ex. A ¶ 9).) Since the alleged breach occurred in Texas, this factor weighs in favor of transfer.

### (3)   Convenience of the Witnesses

The Court is required to consider convenience of the witnesses only, "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also Ferratex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 441 (D.N.J. 2015); *Ziemkiewicz v. R+L Carriers, Inc.*, No. 12-1923, 2013 WL 505798, at \*4 (D.N.J. Feb. 8, 2013). Defendant argues that Smart Payment's critical witnesses who live in Texas—Jackson Bigham,

8

Joel Kleppinger, and David Engelman—will be greatly inconvenienced if they have to travel to New Jersey for trial. (Def.'s Moving Br. 18.) Plaintiff notes that a Texas forum "may deprive her of her ability to get her witnesses to appear to testify on her behalf." (Pl.'s Opp'n Br. 5.)

While the parties' witnesses may be inconvenienced by traveling to a certain forum, neither party has named any witnesses that will actually be unavailable for trial in either New Jersey or Texas. Defendant names witnesses, but asserts only that they will be inconvenienced, not that they actually cannot travel to New Jersey. Accordingly, this factor is neutral.

(4)    Location of Books and Records

The location of the books and records is "similarly limited to the extent that the files could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879; *see also Ferratex*, 121 F. Supp. 3d at 442; *Ziemkiewicz*, 2013 WL 505798, at *4. This factor however, "is often irrelevant today because of 'recent technological advances' that enable the documents at issue in the litigation to be readily produced in even a distant forum." *Ferratex*, 121 F. Supp. 3d at 442 (quoting *Ziemkiewicz*, 2013 WL 505798, at *4). Defendant briefly notes that all of Smart Payment's "key documents and books" are in Texas. (Def.'s Moving Br. 18.) Plaintiff argues that location of the documents is irrelevant because everything can be accessed via the Internet. (Pl.'s Opp'n Br. 5.)

Defendant has asserted only that the documents are in Texas, not that these key documents cannot be produced in New Jersey. Defendant did not rebut or reply to Plaintiff's assertion that all of the key documents can be accessed via the Internet. As technology allows documents to be readily produced in New Jersey, this factor is also neutral.

Taken together, the private interests factors weigh in favor of transfer to Texas.

9

b.      The Public Interest Factors

(1)      Court Congestion

Defendant argues that the New Jersey court's congestion favors transfer because the median time to trial in New Jersey, 35.9 months, is far greater than that in the Western District of Texas, which is 21.6 months.  (Def.'s Moving Br. 19 (citing U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, *available at* http://www.uscourts.gov/statistics/table/c-5/judicial-business/2014/09/30).)

"Although relative court congestion is not the most important factor on a motion to transfer and alone is insufficient to warrant a transfer, when considered in relation to the lack of substantial events occurring in this District, this factor weighs rather strongly in favor of a transfer." *McNulty*, 913 F. Supp. 2d at 122 (citing *Reed v. JTH Tax, Inc.*, No. 07-1804, 2007 WL 2416445, at *5 (D.N.J. Aug. 21, 2007) (finding that court congestion favored transfer where the median time from filing to trial was 30.7 months in transferor forum and 9.6 months in transferee forum)).  While court congestion is not a dispositive factor, when taken together with the fact that the breach occurred in Texas and that Plaintiff is not a New Jersey resident, the Court finds that this factor weighs in favor of transfer.

(2)      Interest in Deciding Local Controversies at Home

A forum has a local interest in a matter if "the 'locus of the majority of the relevant conduct'" occurred there. *Ferratex*, 121 F. Supp. 3d at 442 (quoting *Chigurupati v. Daiichi Sankyo Co.*, No. 10-5495, 2011 WL 3443955, at *6 (D.N.J. Aug. 8, 2011), *aff'd*, 480 F. App'x 672 (3d Cir. 2012).  Defendant argues that New Jersey "has a remote interest . . . at best" because Plaintiff does not reside in New Jersey, the claim did not arise here, and nearly all critical witnesses reside in other states.  (Def.'s Moving Br. 19.)  Plaintiff does not specifically refer to this factor, but does

10

note that Plaintiff's New Jersey clients have been harmed by Smart Payment's wrongful withholding of commission payments. (Pl.'s Opp'n Br. 5.)

New Jersey is not where the majority of the relevant conduct occurred. The decision to withhold commission payments, and thus, the breach that Plaintiff refers to, occurred in Texas. Plaintiff's New Jersey clients may have been harmed by Defendant's conduct, but this does not mean that any relevant conduct occurred in New Jersey. The relevant conduct—the breach—happened in Texas. Thus, Texas has a greater local interest in the matter than New Jersey does. Accordingly, the Court finds that this factor favors transfer.

Taken together, the public interest factors weigh in favor of transfer.

## III.   CONCLUSION

For the reasons set forth above, Defendant's motion to compel arbitration or transfer venue to Illinois is denied, and Defendant's alternative motion to transfer venue to Texas is granted. An order consistent with this Memorandum Opinion will be entered.

Dated: July 1st, 2016

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE